IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CENTRAL CLAIMS SERVICE, INC.** | : CIVIL ACTION NO. 10-4672 "B"(5) |
| **Plaintiff** | : JUDGE IVAN L. R. LEMELLE |
| v. | : MAGISTRATE JUDGE ALMA L. CHASEZ |
| **CLAIM PROFESSIONALS LIABILITY INSURANCE COMPANY** | : |
| **Defendant** | : |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY

**MAY IT PLEASE THE COURT:**

Pursuant to Section 3 of the Federal Arbitration Act ("FAA," 9 U.S.C. § 3) and to Federal Rule of Civil Procedure 12(b), Defendant Claim Professionals Liability Insurance Company ("CPLIC" or "Defendant") files this Memorandum in Support of Motion to Compel Arbitration and to Stay. All of the claims alleged by Central Claims Service, Inc. ("CCS" or "Plaintiff") in its Original Complaint are subject to mandatory arbitration as provided by the subscription agreement ( Exhibit A), the shareholder's agreement ( Exhibit B) and the policy of insurance issued between CPLIC and CCS ( Exhibit C). Accordingly, Defendant respectfully requests this Court to compel arbitration as agreed to by the parties herein, and in support shows the Court as follows:

### I. INTRODUCTION

Plaintiff CCS has asserted a cause of action for Breach of Contract against Defendant CPLIC. On March 23, 2005, CCS and CPLIC, entered into a subscription agreement where CCS agreed to purchase from CPLIC shares of the CPLIC'S stock and agreed to apply for insurance with CPLIC. In addition, CCS agreed to execute and become bound by the terms and conditions

566667.1

of a Shareholder agreement as well as all of the terms and conditions of the agreement. On June 8, 2005, CCS and CPLIC entered into a shareholders agreement. Both the subscription and shareholder agreements contain the following provision: "Each Shareholder expressly agrees that it will not participate in any action against the Company (CPLIC) and that all such disputes shall be resolved by binding arbitration as provided in the Policy". CPLIC issued a policy of insurance to CCS which includes the following provision on page 9 of the policy:

> By accepting this policy, you agree to submit any claim of dispute, controversy or disagreement over the Coverage available under this policy, any claim for actual or alleged breach of duty arising out of this policy, or any other dispute or claim of any kind between the Company and any Insured to binding arbitration. In the event of such a dispute, both the Company and you agree that binding arbitration is the sole and exclusive remedy to resolve the dispute.

Under the terms of the agreements, Plaintiff and CPLIC agreed "that binding arbitration is the sole and exclusive remedy to resolve the dispute. The express commitment to arbitration was manifested in three distinct agreements signed by Plaintiff. Thus, Plaintiff's claim is subject to mandatory arbitration. Accordingly, CPLIC respectfully requests that this Court grant its Motion and enter an Order compelling Plaintiff to resolve its claims via arbitration as set forth in the agreements and the Policy. CPLIC further requests that the Court dismiss or stay Plaintiff's claims until such arbitration is complete and confirmed.

## II.     LEGAL STANDARD

### A.     Application of the Federal Arbitration Act.

Plaintiff, CCS, is a Louisiana corporation domiciled in Jefferson Parish, and Defendant CPLIC is a Vermont corporation with its principal place of business in California. Because the agreements at issue are between citizens of different states and clearly involves commerce, the

Federal Arbitration Act ("FAA") governs the enforcement and application of the arbitration clause in this case. *See* 9 U.S.C. § 2 (2011). The FAA mandates that "[a] written provision in any . . . contract evidencing a transaction involving commerce *to settle by arbitration a controversy* thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof" is "valid, irrevocable, and enforceable." *Id.* (emphasis added).

Section 4 of the FAA provides that a party aggrieved by the refusal of another to arbitrate under a written agreement for arbitration may petition the Court for an order compelling the parties to proceed to arbitration. *See* 9 U.S.C. § 4 (2011). Pursuant to Section 4, Defendant seeks an Order from this Court compelling the parties to proceed to arbitration as agreed by the parties herein on the claim made by Plaintiff in this litigation.

### B.     Federal Law Favors Arbitration.

The United States Supreme Court has settled that federal law overwhelmingly favors arbitration stating:

> [W]ith a healthy regard for the federal policy favoring arbitration . . . [t]he Arbitration Act establishes that, as a matter of federal law, ***any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration***, whether the problem at hand is a construction of the contract language itself or an allegation of waiver, delay, or a light defense to arbitrability. (emphasis added).

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 103 S. Ct. 927, 941 (1983). This presumption in favor of arbitration has been repeatedly reaffirmed by the United States Supreme Court. *See, e.g., Circuit City Stores, Inc. v. Adams*, 121 S.Ct. 1302 (2001); *Randolph v. Green Tree Fin. Corp.*, 121 S.Ct. 513, 521-22 (2000). If any doubt exists as to whether the dispute is encompassed by the agreement to arbitrate, the intent to arbitrate is presumed and any doubt is resolved in favor of arbitration. *AT&T Tech., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986).

### C. The Two-Part Analysis

"Arbitration is a matter of contract between the parties, and the Court cannot compel a party to arbitrate unless the Court determines the parties agreed to arbitrate the dispute in question." *Pennzoil Exploration and Prod. Co. v. Remco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998). When deciding if a party may be compelled to arbitrate, the Court must first determine whether the parties agreed to arbitrate the dispute; if so, the Court considers whether there is any federal statute or policy that renders the claim non-arbitrable. *Scherer v. Green Tree Servicing, Ltd.*, 548 F.3d 379, 381 (5th Cir. 2008). The first step consists of two considerations: whether there is a valid agreement to arbitrate between the parties; and whether the dispute in question falls within the scope of the arbitration agreement. *Id.* In construing the scope of arbitration agreements, the Supreme Court has established that "ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989).

### III.  ARGUMENT & AUTHORITIES

#### a. The Parties Entered Into a Valid Agreement to Arbitrate.

The agreement to arbitrate contained in the three agreements entered into between Plaintiff and CPLIC and is valid and binding on Plaintiff. There can be no dispute that Plaintiff entered into the agreements with CPLIC, and that they contain clear and unambiguous mandatory arbitration provisions. To defeat arbitration, any defense to the arbitration agreement must relate specifically to the arbitration agreement itself and not to the contract as a whole. *Prima Paint Corp. b. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-03 (1967).

No circumstances exist in this case to challenge the existence of the arbitration agreement. The Federal Arbitration Act clearly supports the validity of the Policy's arbitration clause, because the contract involves commerce, and is between citizens of different states. *See* 9 U.S.C. § 2. Federal law specific to Risk Retention Groups, like CPLIC, further affirms both the primacy of federal law and the inapplicability of any contrary State law to Risk Retention Groups. The Federal Liability Risk Retention Act gives groups sharing the same or similar characteristics the right to unite to provide insurance for the specific needs of their members. *See* 15 U.S.C. § 3901 et seq. A Risk Retention Group operates by depositing capital from its members in a sum greater than or equal to the statutory minimum as required by the Group's State of domicile. The general rule is that "a risk retention group is exempt from any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would make unlawful, or regulate, directly or indirectly, the operation of a risk retention group." 15 U.S.C. § 3902. Louisiana, too, specifically recognizes the supremacy of federal law in respect to Risk Retention Groups. *See* La. R.S. 22:484(A) (noting that if a risk retention group fails to qualify under the provisions of the federal Risk Retention Amendments of 1986, the commissioner may then apply any state law that may have otherwise been preempted by the federal Risk Retention Amendments). Thus, the provisions of the FAA govern, and the Policy's arbitration provisions are valid and binding on Plaintiff.

### b. This Dispute Falls Within the Scope of the Arbitration Provision.

There can be no reasonable dispute that Plaintiff's claims against CPLIC fall within the scope of the arbitration provisions that they agreed to. Each arbitration provision expressly encompasses any and all claims between the parties. With such broad arbitration clauses, "it is only necessary that the dispute 'touch' matters that are covered by the [contract] to be

- 6 -

arbitrable." *Pennzoil*, 139 F.3d at at 1068; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 625-26 n.13 (1985). Moreover, when the agreement between the parties contains such a broad provision, the policy favoring arbitration is heightened and there is an especially strong presumption that all matters and claims concerning the relationship are arbitrable. *AT&T Tech.*, 475 U.S. at 650; *Union of Transp. Employees v. Oil Transp. Co.*, 668 F.2d 821, 823 (5th Cir. 1982). The dispute at issue in this case between Plaintiff and CPLIC is within the scope of the arbitration provision. Given the broad scope of the arbitration clause and the presumption in favor of arbitrability, it cannot be said that the arbitration clause here does not cover this dispute.

## IV.   CONCLUSION

For all these reasons, there can be no doubt that Plaintiff agreed to arbitrate all claims with CPLIC and that Plaintiff's claims fall within the scope of the arbitration provision. In light of the proclamation that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, Plaintiff's claims are undoubtedly subject to mandatory arbitration.

**WHEREFORE**, Defendant requests that the Court compel the parties to proceed to arbitration on all claims asserted by Plaintiff and stay or in the alternative, dismiss these proceedings pending arbitration of Plaintiff's claims.

Respectfully Submitted,

*s/ Ann M. Halpen*
William Shelby McKenzie
Louisiana State Bar No. 10030
Ann M. Halphen-TRIAL ATTORNEY
Louisiana State Bar No. 17569
Amy C. Lambert
Louisiana State Bar No. 24348
Taylor, Porter, Brooks & Phillips, LLP
P.O. Box 2471 (451 Florida St. 8th Floor)
Baton Rouge, Louisiana 70821
P: (225) 381-0276
F: (225) 346-8049
shelby.mckenzie@taylorporter.com
ann.halphen@taylorporter.com
amy.lambert@taylorporter.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of March, 2011, a copy of the foregoing was this day filed electronically with the Clerk of Court using the CM/EDF system. Notice of this filing will be sent to all counsel by operation of the Court's electronic filing system.

*s/Ann M. Halphen*
Ann M. Halphen